IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TIANA A. PATTERSON                                                          PLAINTIFF

v.                                                  CIVIL ACTION NO. 3:11-cv-623-CWR-FKB

ST. DOMINIC-JACKSON                                                        DEFENDANT
MEMORIAL HOSPITAL

## MEMORANDUM OPINION AND ORDER

Before the Court is St. Dominic-Jackson Memorial Hospital's ("St. Dominic") motion for summary judgment. Docket Nos. 30; 31. The matter is fully briefed and is ready for review. The motion is DENIED.

### I. Factual and Procedural History

Plaintiff Tiana A. Patterson ("Patterson") worked as a registered nurse ("RN") in St. Dominic's emergency room from August 2005 until March 2009. Patterson worked under Bonnie Butner ("Butner"), who served as the emergency room's director and as Patterson's direct supervisor.

During a July 2008 restructuring, St. Dominic created four new positions called "RN Team Leads." These positions were created to manage the staff of registered nurses in the hospital's emergency room. Butner managed the hiring process for the new posts. The position would have been a promotion for Patterson. She submitted her application in August 2008, and was interviewed on September 8, 2008.

The day of her interview, Patterson lodged a verbal complaint with Brenda Horton, a compensation analyst within St. Dominic's Human Resources Department, objecting to the interview process. The complaint was reported to Curnis Upkins, Jr., St. Dominic's Director of Human Resources, who ordered an investigation. While Patterson awaited the results, she alleges

that another employee told her that Butner had said she would not hire a woman as RN Team Lead because women were "too emotional, had too much drama and could not handle stress."

On September 22, 2008, Patterson learned that the four RN Team Lead positions had been filled by men. Patterson filed another complaint with Brenda Horton; the complaint alleged sex discrimination. St. Dominic denies possessing any record of receiving this or any other written complaint or grievance from Patterson concerning this allegation.

In December 2008, Butner contacted Dena Boggan, St. Dominic's HIPAA Privacy and Security Officer, to report employee complaints that Patterson was accessing medical charts for patients not assigned to her, in violation of St. Dominic's Privacy and Security Sanction Policy. Boggan pulled Patterson's medical access records and asked Butner to identify those records that Patterson had accessed without authorization. Butner produced a list containing more than 100 entries. Based on Butner's indications, Boggan found that Patterson had committed a "gross violation" of St. Dominic policy and recommended that she be terminated. St. Dominic accepted this recommendation and terminated Patterson's employment on March 11, 2009.

Patterson filed a charge of discrimination with the EEOC on March 19, 2009. The EEOC, through its own investigation, found reasonable cause to believe that Patterson had experienced sex discrimination and retaliation; it issued a notice of right to sue on July 6, 2011. Docket No. 34-8.

Patterson filed this lawsuit on October 3, 2011, seeking damages for Title VII sex discrimination and retaliation. St. Dominic has moved for summary judgment on all claims.

## II. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). When confronted with these motions, the Court focuses on "genuine" disputes of "material" facts. A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). The Court will "view the evidence and draw reasonable inferences in the light most favorable to the non-movant," *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011) (citations omitted), but unsubstantiated assertions are not competent summary judgment evidence, *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

### III. Law and Analysis

**A. Title VII Sex Discrimination**

"Title VII requires persons claiming discrimination to file a charge with the EEOC within 180 days after the allegedly discriminatory practice occurs. The period begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred." *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000); 42 U.S.C. § 2000e-5(e).

St. Dominic claims that Patterson failed to file a timely charge of sex discrimination with the EEOC, and that she is therefore barred from bringing this claim. St. Dominic contends that Patterson "knew or reasonably should have known" that she had suffered sex discrimination on

either of two alternative dates, both of which place Patterson's EEOC charge outside the statutory period.

St. Dominic argues that the statutory period began to run on September 8, 2008 (i.e. 193 days before filing), because that was the day that Patterson complained to Human Resources that she felt she "had been given the runaround" regarding her application for promotion. Docket No. 30-1, at 57. In the alternative, St. Dominic argues that the statutory period began to run on September 18, 2008 (i.e. 183 days before filing), because that was the day that another employee told Patterson that Butner "had told him she was not going to hire a female." Docket No. 30-1, at 59.

Patterson maintains that the statutory period did not begin to run until September 22, 2008 (i.e. 178 days before filing), because this was the day that she learned that all the available positions had been filled by men. Docket No. 34-4, at 5.

The Court finds that St. Dominic has not shown that it is entitled to summary judgment on Patterson's sex discrimination claim. St. Dominic, has failed to provide any proof that plaintiff knew or should have known that she had been the victim of discrimination on September 8 or September 18. Its arguments in favor of these dates attempt to elevate Patterson's expressions of procedural frustrations to claims of discrimination, and would otherwise mistake office gossip for an official administrative announcement. *See Tharling v. City of Port Lavaca*, 329 F.3d 422, 427 (5th Cir. 2003) ("[T]he connection between 'gossip' and actual knowledge . . . is tenuous, at best . . . [ and is] therefore insufficient to permit a reasonable juror to conclude that [defendants] were aware of [plaintiff's] allegations prior to their termination.").

In this instance, it was reasonable for Patterson to believe that she was in the running until the very last position was filled on September 22, 2008. Despite speculation regarding who

may or may not have been promoted, Patterson could not have known, or been reasonably expected to know, that she had been discriminated against until she discovered that all the positions were filled and that her application for promotion would be denied. Indeed, she likely could not have filed any complaint before then. *See, e.g.*, *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 463 (D. Md. 2002) *aff'd*, 86 F. App'x 665 (4th Cir. 2004) ("Even if Plaintiff had learned earlier that he would not be receiving [a promotion], he did not suffer a tangible, adverse action until he was denied [the promotion] . . . and, therefore, could not have filed a discrimination complaint until then.").

September 22 is the only date in the record where Patterson was made aware of the final decisions of persons at St. Dominic with the authority to promote or not promote. Docket No. 34-4, ¶ 6. September 22, therefore, is the date from which the statutory period should be measured. *See, e.g.*, *Turner v. Huntington Ingalls, Inc.*, No. 1:06-cv-835, 2011 WL 4377531, *3 (S.D. Miss. Sept. 16, 2011) ("Discrete acts such as termination, failure to promote, denial of transfer, lay-off, or refusal to hire are easily identified."). By its own admission, St. Dominic recognizes that this date falls within the statutory period and would allow Patterson's case to go forward.

**B. Title VII Retaliation**

To prove Title VII retaliation, a plaintiff must show: "(i) [s]he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citation omitted). "Close timing between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a *prima facie* case of retaliation." *Richardson v. Prairie Opportunity, Inc.*, 470 Fed. App'x

282, 287 (5th Cir. 2012). A time lapse of four months has been found sufficient to satisfy the causal connection for summary judgment purposes. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). Once the plaintiff has made this showing, the burden shifts to the employer to provide a legitimate nondiscriminatory reason ("LNDR") for the adverse employment action. *Hernandez*, 670 F.3d at 657. If St. Dominic presents evidence showing that it acted properly, the burden then returns to Patterson to show that St. Dominic's proffered reason is pretextual or that retaliation was a motivating factor in her non-selection. *Richardson*, 470 Fed. App'x. at 287.

Patterson may survive summary judgment by creating a genuine dispute on the truth of St. Dominic's legitimate nondiscriminatory reason, thereby permitting the jury to infer retaliation. *Id*. Furthermore, a plaintiff can impute a supervisor's retaliatory animus to a decisionmaker where she "submit[s] evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker." *Roberson v. Alltel Info. Services*, 373 F.3d 647, 653 (5th Cir. 2004) (citations and quotation marks omitted).

St. Dominic's argument is two-fold. First, it contends that Patterson cannot establish a causal link. Second, it argues that that even if Patterson could show causation, her claim still fails because she cannot prove that its legitimate nondiscriminatory reason is pretextual.

    1. Patterson's Causal Link

"[T]he existence of a causal link between protected activity and an adverse employment action is a highly fact specific and difficult question." *Smith v. Xerox Corp.*, 371 F. App'x 514, 520 (5th Cir. 2010). Multiple factors are relevant to determining whether causation exists, including: "(1) the employee's past disciplinary record, (2) whether the employer followed its

typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Id.* (citations and quotation marks omitted).

St. Dominic argues that there is no causal link because Butner, through her own testimony, indicated that she was unaware of Patterson's complaint when she initiated the investigation of Patterson's use of patient medical records, *see* Docket No. 30-2, at 40-44; and because Patterson cannot offer direct evidence proving otherwise, *see* Docket No. 30-1, at 94, 100-04. Butner's testimony is corroborated by testimony from the human resources director, averring that St. Dominic never notified Butner of the allegations against her. Docket No. 30-9. Alternatively, St. Dominic contends that there is no causal link because Patterson was fired through standard procedures, and because a causal link cannot be inferred from the 6-month gap between Patterson's complaint (September 2008) and her termination (March 2009).

Patterson argues that Butner did, in fact, report her to Boggan in retaliation for her complaint, and that it was Butner's retaliatory act that caused her to be fired. Patterson offers several pieces of circumstantial evidence in support of this contention, showing that: Until she was denied promotion, Patterson maintained an "exemplary" disciplinary record at St. Dominic. Docket No. 34-4, at ¶¶ 3-5. Butner had previously stated that she did not want a woman in the position that Patterson applied for because "women [were] too emotional, had too much drama, and could not handle stress." Docket No. 34-3, at 13-14. Patterson complained of Butner's conduct to St. Dominic's Human Resources Department, both verbally and in writing. Docket Nos. 34-1; 34-4. Following Patterson's complaint, Butner initiated an investigation of Patterson by the privacy officer. Docket No. 34-5. The privacy officer relied exclusively on Butner's determinations of whether Patterson's conduct was authorized. Docket No. 34-5, at 35. Butner told the privacy officer that Patterson would not have any need to access the charts of patients to

7

whom she had not been assigned. Docket No. 34-5. Despite Butner's assertions, other employees found it to be common and accepted practice that RNs working in the emergency room would regularly access the charts of patients not assigned to them, for a variety of reasons. Docket Nos. 34-3 at 17-20; 34-6, at 16-17, 20-23. And, according to the privacy officer, all instances of unauthorized access occurred while the patients were in St. Dominic's emergency room during Patterson's shifts. Docket No. 34-5, at 13-15.

The Court finds that Patterson has shown a genuine dispute as to whether Butner reported Patterson to the privacy officer because of Patterson's complaint about sex discrimination. St. Dominic claims that Patterson cannot create a causal link without direct evidence that Butner acted with knowledge. But the absence of direct evidence is not fatal to Patterson's claim. "Because of the general lack of availability of direct evidence of retaliatory intent, plaintiffs alleging retaliation most often must travel the less advantageous circumstantial evidentiary path." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003), *overruled on other grounds by Smith v. Xerox Corp.,* 602 F.3d 320, 327 (5th Cir. 2012).

Here, Patterson alleges that there was knowledge under the circumstances. Such knowledge can be inferred from the proximity of Patterson's complaints (September 2008) to Butner's initiation of an investigation of her (December 2008), and from the fact that other emergency room RNs were not reported for the engaging in the same conduct, which was commonly accepted practice. These details, coupled with Patterson's previously unblemished employment record and Butner's earlier statement that she would not hire a woman, could lead a reasonable juror to conclude that Butner acted with knowledge of Patterson's reports.

Further, the Court finds that a genuine dispute of material fact exists on whether St. Dominic's use of prescribed termination procedures was retaliatory. Butner's retaliatory intent is

8

attributable to St. Dominic, if she "possessed leverage, or exerted influence, over the titular decisionmaker." *Roberson*, 373 F.3d at 653. Patterson has put forth evidence that Boggan relied solely on Butner's assessments in order to reach the conclusion that Patterson violated hospital policy; this conclusion led Boggan to recommend that Patterson be fired. Although St. Dominic used standard procedures to investigate Patterson, it relied exclusively on information reported by Patterson's alleged discriminator to support its decision to fire her. Under these circumstances, a reasonable juror could determine that Butner "exerted influence" over Boggan, such that St. Dominic's use of the termination procedures was retaliatory.

In light of these findings, St. Dominic's argument that Patterson cannot identify a causal link based on temporal proximity alone is immaterial. Although "[t]emporal proximity between protected activity and an adverse employment action, by itself, does not . . . satisfy the prima facie burden unless that proximity is 'very close,'" *Everett v. Cent. Miss., Inc. Head Start Program*, 444 F. App'x 38, 46 (5th Cir. 2011), Patterson's claim is based on more than mere proximity alone. As discussed above, Patterson has presented ample evidence to permit a jury to find that a causal link existed under the circumstances. *See Brown v. Miss. Dep't of Health*, No. 3:11-cv-146, 2012 WL 1143846, *4 (S.D. Miss. Apr. 4, 2012) (denying summary judgment against a plaintiff alleging retaliation where reasonable jurors could fairly infer causation from evidence other than temporal proximity).

2. St. Dominic's LNDR and Pretext

St. Dominic's alternate argument is that Patterson cannot show that its legitimate nondiscriminatory reason is pretextual. It claims that Patterson was fired for violating its privacy and security policies based on Butner's honest belief that Patterson's actions were improper. *See* Docket Nos. 30-11; 30-9; 30-2. Patterson, by contrast, argues that Butner's reasons are

manufactured because Butner actually sought to have her fired for complaining of sex discrimination.

The Court finds that these arguments raise a genuine dispute of material fact. Although Butner's honest belief that Patterson should have been fired for failing to comply with hospital policy may serve as St. Dominic's legitimate nondiscriminatory reason, there is dispute as to whether Butner's belief was truly honest. Patterson has supplied evidence, discussed above, suggesting that Butner never disciplined nurses for violating the policy. This evidence goes to the truthfulness of St. Dominic's proffered legitimate nondiscriminatory reason, and therefore provides sufficient basis for a jury to find that St. Dominic's legitimate nondiscriminatory reason is pretextual. *See Brown*, *supra*, at \*4 (finding that jurors should assess the credibility of selecting official's denial of retaliatory animus, where the evidence could lead them to conclude otherwise).

### IV. Conclusion

As explained above, St. Dominic has failed to show that there is no genuine dispute of material fact, and that it would be entitled to judgment on the merits. Therefore, the defendant's motion for summary judgment is DENIED.

**SO ORDERED**, this the 19th day of March, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
